# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

City of Minneapolis,                                    Civil No. 10-CV-3312 (SRN/SER)


      Plaintiff/Counter-Defendant,                                    **ORDER**

v.

Redflex Traffic Systems, Inc.,

      Defendant/Counter-Plaintiff

_____

Tracey N. Fussy and Andrea Kloehn Naef, Minneapolis City Attorney's Office, 350 South Fifth Street, Room 210, Minneapolis, Minnesota 55415, for Plaintiff

David L. Shulman and Craig A. Buske, Law Office of David L. Shulman, PLLC, 1005 West Franklin Avenue, Suite 3, Minneapolis, Minnesota 55405, for Defendant
_____

SUSAN RICHARD NELSON, United States District Court Judge

      This matter is before the Court on Plaintiff's Objections to the Magistrate Judge's Report & Recommendation of January 24, 2013 (the "R&R") [Doc. No. 70]. In the R&R, the Magistrate Judge recommended that this Court: (1) grant Defendant's Motion for Summary Judgment [Doc. No. 35] as to Plaintiff's claims; (2) deny Defendant's Motion for Summary Judgment as to its counterclaim; and (3) deny Plaintiff's Motion for Summary Judgment [Doc. No. 37]. (R&R at 31 [Doc. No. 70].) For the reasons set forth herein, the Court adopts the magistrate judge's recommendations in part, grants Defendant's Motion for Summary Judgment as to claims asserted against Defendant,

1

denies as moot summary judgment as to Defendant's counterclaim, and denies Plaintiff's

Motion for Summary Judgment.

## I.     BACKGROUND

The underlying factual background of this case is thoroughly set forth in the R&R,

and is incorporated herein by reference.  In brief, this case involves a March 2005

contract (the "Contract") for the installation and operation of cameras for use in a traffic

law enforcement program (the "Program").  The Program implemented a 2004 City of

Minneapolis ordinance (the "Ordinance") which permitted the use of an automated traffic

enforcement system to detect motorists' failure to stop at red lights.  (Compl. ¶ 3 [Doc.

No. 1-1].)  Under the terms of the Contract, Redflex was to complete the installation of

traffic cameras used for the Program, including the hiring of electrical subcontractors.

(Contract, Ex. A to First. Decl. of David Shulman in Supp. Def.'s Mot. for Summ. J., Ex.

B to Contract, § 1.10.)  The Contract required Redflex to process the violations data and

to print and mail citations.  (Id. § 3.3.)  Redflex warranted that "any and all services

provided by Redflex pursuant to this Agreement shall be performed in a professional and

workmanlike manner," and that the system would be installed "subject to applicable law,

in compliance with all specifications provided to Redflex by the Customer."  (Id. § 5.1.2.)

 As to the City's obligations, the Contract required it to pay Redflex a monthly fee.  (Id.,

Ex. D to Contract.)  In addition, the City was to "[n]otify Redflex of any specific

requirements relating to the construction and installation of any Intersection Approaches

or the implementation of the Redlight Photo Enforcement Program."  (Id., Ex. B to

Contract § 2.3.)  An Assistant City Attorney reviewed the Contract and determined that a payment bond under Minn. Stat. § 574.26 (the "Bond Act") was unnecessary.  (R&R at 5 [Doc. No. 70].)  The Contract contained no provision regarding the procurement of a performance or payment bond.

In the indemnification provisions of the Contract, Redflex agreed to defend and indemnify the City for any liabilities resulting from the following: (a) any material misrepresentation or breach of the Contract by Redflex; (b) any conduct by Redflex or its agents resulting in death or bodily injury or damage to real or personal property, except when caused by willful misconduct of the City; "and Redflex agrees to indemnify the [City. . .] for any and all legal liability based on any and all civil, criminal and administrative actions challenging the legality or constitutionality of the [Program] or any action seeking to halt the [Program] that are not caused by material breach, willful misconduct and material misrepresentation by the [City]; (c) any claims "not caused by Redflex's failure to perform its obligations" under the Contract; (d) any claims challenging the City's use of the Program, including the validity of the citations issued, prosecuted and collected; or (e) any claim, action or demand challenging Redflex's failure to maintain the Program. (Id. § 8.1.)   The Contract also placed indemnity obligations on the City, requiring it to indemnify Redflex for any losses incurred by Redflex resulting from: (a) the City's material breach of the Contract; or (b) any willful misconduct caused by the City resulting in death or bodily injury or damage to real or personal property, unless caused by the negligence or misconduct of Redflex.  (Id. § 8.2.)

Any party seeking indemnification from the other is required, under the Contract, to give prompt written notice to the party from whom indemnification is sought after the indemnified party first becomes aware of its claim.  (Id. § 8.3.)  This procedural provision further states

> that failure so to give such notice shall not preclude indemnification with respect to such Claim except to the extent of any additional or increased Losses or other actual prejudice directly caused by such failure.  The Indemnifying Party shall have the right to choose counsel to defend such Claim (subject to the approval of such counsel by the Indemnified Party...), and to control, compromise and settle such Claim, and the Indemnified Party shall have the right to participate in the defense at its sole expense; provided, however, the Indemnified Party shall have the right to take over the control of the defense or settlement of such Claim at any time if the Indemnified Party irrevocably waives all rights to indemnification from and by the Indemnifying Party.  The Indemnifying Party and the Indemnified Party shall cooperate in the defense or settlement of any Claim, and no party shall have the right to enter into any settlement agreement that materially affects the other party's material rights or material interests without such party's prior written consent, which consent will not be unreasonably withheld or delayed.

(Id. § 8.3) (emphasis added).   The Contract also provides that any notices are to be in writing.  (Id. § 9.)

In this suit, the City seeks indemnification and reimbursement for costs and fees incurred defending two types of lawsuits concerning the Program: (1) challenges to the legality of the Program; and (2) contract-based litigation related to work done by a subcontractor.

### A.    Underlying Litigation

The cases challenging the legality of the Program include State v. Kuhlman, State

v. Adan, and Shapira v. City of Minneapolis.   In Kuhlman, the Minnesota Supreme Court

held that state law preempted the Ordinance.  729 N.W.2d 577, 580 (Minn. 2007).  In

Adan, the Hennepin County District Court dismissed all guilty pleas resulting from

citations issued under the Ordinance and ordered the City to decertify the convictions and

refund all fines.  (State v. Adan 10/1/07 Order at 1, Ex. 15 to Fussy Aff.)  Shapira

involved a class action brought by plaintiffs alleging that the City's imposition of fines

under the Program was unconstitutional.  (Shapira v. City of Minneapolis, No. 06-CV-

2190 (MJD/SRN), Compl., Ex. BB to Fourth Shulman Decl. [Doc. No. 48].)  The Shapira

matter resolved by settlement in 2008.  (R&R at 7 [Doc. No. 70].)  Redflex was not

involved in the settlement.  (Id.)  The City claims that it paid a total of approximately

$1,333,509.70 in settling Shapira, however it did not disclose these damages to Redflex in

its Rule 26(a) disclosures in this case.  (Id.)

     The lengthy history of the contract-based litigation concerning Redflex's

subcontractor, ColliSys ("the ColliSys litigation") is thoroughly set forth in the R&R.  (Id.

at 8-14.)  In brief, ColliSys brought claims against both the City and Redflex pursuant to a

mechanic's lien theory, a separate claim against the City for violation of the Bond Act,

and a separate claim against Redflex for unjust enrichment.  (Id.)  The mechanic's lien

claims were dismissed.  (Id.)  As to the Bond Act claim, a jury found that the Program

was a "public work" under the Bond Act, and ultimately, the City was found liable for

$163,5000 in damages for that claim.  (Id.)  In addition, Redflex was granted summary

judgment on ColliSys' unjust enrichment claim against Redflex.  (Id.)

The City seeks recovery here under two breach of contract claims, and in the alternative, under the equitable remedies of contribution and equitable subrogation. (Complaint ¶¶ 38-62 [Doc. No. 1-1].)  In addition, the City seeks a declaratory judgment that Redflex has a duty to defend and indemnify the City against all legal liability.  (Id. ¶ 68.)

In its Answer, Redflex denies liability and asserts the following affirmative defenses: (1) the City's damages were caused by the unlawful acts of a third party; (2) the City failed to mitigate; (3) the City's damages were caused in whole or in part by its own negligent or unlawful conduct; (4) Redflex paid all sums due on the Minneapolis project and cannot be required to pay twice; (5) laches, estoppel, and waiver bar the City's claims; (6) res judicata and collateral estoppel bar the City's claims; and (7) the City's claims are barred by its failure to comply with the indemnification procedures of the Contract.  (Answer & Countercl. ¶¶ 48-55 [Doc. No. 2].)   In addition, Redflex asserts a breach of contract counterclaim, alleging that the City committed a material breach of the Contract when it failed to notify Redflex that a payment bond was required pursuant to Minn. Stat. § 574.26.

**B.      The R&R**

As to the parties' breach of contract claims, Magistrate Judge Rau found that the Contract was invalid because neither party procured a payment bond, as required by statute.  (R&R at 17 [Doc. No. 70].)  Although Redflex did not raise an invalidity defense in its Answer, it raised the issue in its summary judgment briefing.  (Def.'s Mem. Supp.

Mot. for Summ. J. at 31 [Doc. No. 44].)  The Magistrate Judge determined that the

parties' filings, as well as discovery, afforded the City sufficient notice of the

applicability of Minn. Stat. § 574.26.  (R&R at 18 [Doc. No. 70].)  Accordingly,

Magistrate Judge Rau found that the City had not shown that the invalidity defense

caused unfair surprise or prejudice.  (Id. at 19.)  Morever, the Magistrate Judge concluded

that even if the Complaint and Answer did not properly preserve the invalidity defense,

the Court, in its discretion, could grant leave to amend the Answer.  (Id.)

Specifically, applying the plain language of Minn. Stat. § 574.26, Magistrate Judge

Rau found that the failure to obtain a payment bond vitiated an otherwise valid contract.

(Id. at 21.)  The magistrate judge concluded that the statute's reference to contracts "with

a public body for the doing of any public work" applied to the Contract here, as had been

determined by the jury in the underlying ColliSys litigation.  (Id.)  Applying principles of

collateral estoppel, Magistrate Judge Rau found that the ColliSys jury's conclusion that

the Program was a public work "remained unchanged and final," and that, as a defendant

in ColliSys, the City had a full and fair opportunity to be heard on this issue.  (Id. at 22.)

Lastly, the Magistrate Judge observed that the City's claim of over $1.2 million in

damages related to the Shapira settlement – an amount asserted for the first time in the

City's memorandum – failed to comply with Federal Rule of Civil Procedure 26.  (R&R

at 28-29 [Doc. No. 70].)   The R&R notes that the City failed to disclose this amount in its

Rule 26 disclosures and in its discovery responses.  (Id.)  Instead, the City previously

identified $92,795.99 in Shapira settlement damages.  (Id.) (citing Pl.'s Rule 26

Disclosures; Pl.'s Answers to Interrogs.)  The magistrate judge further observed that in

the <u>Adan</u> state court litigation, the City was required to refund all fines and fees

associated with the Ordinance.  (<u>Id.</u> at 30.)  "Thus, according to state courts, the City is

not entitled to the fines as a matter of law.  To allow it to now seek to collect the fines

would be an affront to justice and equity."  (<u>Id.</u>)

   As noted, Plaintiff timely filed objections to the R&R [Doc. No. 79], to which

Defendants responded [Doc. No. 75].   Plaintiff objects to the Magistrate Judge's ruling,

arguing that: (1) Redflex waived its invalidity argument as to Plaintiff's breach of

contract claim; (2) the plain language of the Contract requires indemnification; (3) the

City's equitable claims of contribution and equitable subrogation should survive because

both parties believed that the contract was valid and an unclean hands defense is

inapplicable in these circumstances, absent some evidence of misconduct.  (Objections at

1-15 [Doc. No. 74].)

   In response to Plaintiff's Objections, Redflex requests that this Court reject the

City's arguments and accept the R&R in its entirety.  (Resp. at 1 [Doc. No. 75].)  As to

the breach of contract claims, Redflex argues that: (1)  there is no reason to disturb the

Magistrate Judge's finding of invalidity, since the plain language of Minn. Stat. § 574.26

invalidates the contract; (2) Redflex was not required to plead contract invalidity, and the

City had sufficient notice of the law and facts concerning the defense; (3) the City has not

suffered unfair surprise; and (4) even if the Contract is valid, the City waived its right to

indemnification by failing to give notice and causing Redflex additional losses and actual

prejudice.  (Id. at 1-7; 10.)  Regarding the City's equitable claims, Redflex asserts that the

Magistrate Judge's finding of unclean hands on the part of the City was appropriate –

Redflex asserted defenses premised on the principle of unclean hands.  (Id. at 7-8.)  As to

the City's claims for contribution, Redflex argues that it did not share common liability

with the City on its claims in the ColliSys or Shapira litigation, and therefore cannot be

held liable in contribution.  (Id. at 9.)  Similarly, Redflex argues that Plaintiff's equitable

subrogation claim fails because the City's payment of the ColliSys judgment was not the

payment of a Redflex debt.  (Id. at 10.)

## II.    DISCUSSION

### A.    Standard of Review

According to statute, the Court must conduct a de novo review of any portion of

the Magistrate Judge's opinion to which specific objections are made.  28 U.S.C. §

636(b)(1)(C); Fed. R. Civ. P. 72(b); D. Minn. L.R. 72.2(b).   The district court may

accept, reject, or modify, in whole or in part, the findings or recommendations made by

the magistrate judge.  Id.

As to the magistrate judge's recommendations on the underlying summary

judgment motions, summary judgment is proper if there are no disputed issues of material

fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a).

The Court must view the evidence and the inferences that may be reasonably drawn from

the evidence in the light most favorable to the nonmoving party.  Enter. Bank v. Magna

Bank of Missouri, 92 F.3d 743, 747 (8th Cir. 1996).  However, "[s]ummary judgment

procedure is properly regarded not as a disfavored procedural shortcut, but rather as an

integral part of the Federal Rules as a whole, which are designed to secure the just,

speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477

U.S. 317, 327 (1986) (citations and quotations omitted).

The moving party bears the burden of showing that there is no genuine issue of

material fact and that it is entitled to judgment as a matter of law. Id. at 323; Enter. Bank,

92 F.3d at 747.  A party opposing a properly supported motion for summary judgment

may not rest on mere allegations or denials, but must set forth facts in the record showing

that there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256

(1986).

**B.     Breach of Contract Claims**

The Minnesota statute applicable to contractors' bonds for public work at the time

of the parties' Contract provided, in relevant part:

> Except as provided in sections 574.263 and 574.264 or if the amount of the
> contract is $75,000 or less, a contract with a public body for the doing of
> any public work is not valid unless the contractor gives (1) a performance
> bond to the public body with whom the contractor entered into the contract,
> for the use and benefit of the public body to complete the contract
> according to its terms, and conditioned on saving the public body harmless
> from all costs and charges that may accrue on account of completing the
> specified work, and (2) a payment bond for the use and benefit of all
> persons furnishing labor and materials engaged under, or to perform the
> contract, conditioned for the payment, as they become due, of all just claims
> for the labor and materials.

Minn. Stat. § 574.26, subd. 2 (2005) (emphasis added).[1]   The statute defines "public

body" to include "the state, municipal corporation, school district, or other public board

or body."  Minn. Stat. § 574.26, subd. 1.  Two related statutory provisions are of note.

One statute, Minn. Stat. § 574.28, places the burden of filing the performance and

payment bonds on the contractor on whose behalf the bonds were issued.  Another statute,

Minn. Stat. § 574.29, squarely places liability, in the event of failure to obtain a payment

bond, on the public body:

> If the state or other public body fails to get and approve a valid payment
> bond or securities in place of a payment bond as required by the act, the
> public body for which work is done under the contract is liable to all
> persons furnishing labor and materials under or to perform the contract for
> any loss resulting to them from the failure.

Minn. Stat. § 574.29.

Regarding the applicability of Minn. Stat. § 574.26, the City is a "public body"

under the terms of the statute.  Further, as noted by Magistrate Judge Rau, the

ColliSys jury determined that the Project, which cost well over $75,000, was a "public

work."  (R&R at 21 [Doc. No. 70]) (citing Special Verdict Form, Ex. M at 2 to Second

Shulman Decl.)  Magistrate Judge Rau gave preclusive effect to that determination and

held that collateral estoppel applied to prevent the parties from re-litigating the issue of

whether the Project constituted a public work within the meaning of Minn. Stat. § 547.26.

(Id. at 21-22.)   In any event, Plaintiff does not appear to challenge this determination.

---

[1]  The statute currently applies to contracts estimated to exceed $100,000.  Minn.
Stat. § 574.26, subd. 2 (referencing $100,000 found in Minn. Stat. § 471.345, subd. 3).

11

The Court therefore adopts the R&R's finding that the Program constituted a public work within the meaning of Minn. Stat. § 547.26 and that Minn. Stat. § 547.26 unambiguously states that a contract for public work for which a payment bond is not provided, is invalid. Thus, the Court adopts the magistrate judge's finding that because neither party procured a payment bond, the contract is invalid pursuant to Minnesota law.  (Id. at 17.)

The primary question before this Court is whether Redflex waived its invalidity argument by failing to timely plead invalidity as an affirmative defense.   While Redflex expressly raised contract invalidity as an alternative argument in its Memorandum in Support of its Motion for Summary Judgment (Def.'s Mem. Supp. Mot. for Summ. J. at 31[Doc. No. 44]), it did not assert invalidity as an affirmative defense in its Answer.  The City objects to Redflex's invalidity argument on grounds of untimeliness and waiver. (Pl.'s Opp'n Mem. at 45-46 [Doc. No. 56].)  In addition, at the hearing on the parties' motions, counsel for the City argued that Redflex effectively waived the right to assert any invalidity argument by bringing its own breach of contract counterclaim – a claim which presupposes the existence of a valid contract.  (Hearing of 11/8/12 at 30 [Doc. No. 72].)

Federal Rule of Civil Procedure 8(c) provides that, in responding to a pleading, a party must affirmatively state any avoidance or affirmative defense.  Rule 8(c) lists eighteen examples of such affirmative defenses, including laches, estoppel, and statute of limitations.  Fed. R. Civ. P. 8(c).   The invalidity of a contract is not among the enumerated examples in Rule 8(c).  Id.  While Redflex asserted several affirmative defenses, it did not assert an affirmative defense of contract invalidity pursuant to Minn.

Stat. § 547.26.[2]  In the R&R, Magistrate Judge Rau found that although the invalidity of

the Contract was not affirmatively pleaded in Defendant's Answer, "the requirement of a

payment bond under § 574.26 and the failure to secure such a bond have been central to

this case since its inception more than two years ago."  (R&R at 17 [Doc. No. 70].)   Legal

commentators have noted that "[o]ne standard that has been mentioned for deciding which

defenses must be pleaded affirmatively and what is embraced by a denial is whether a

particular issue arises by logical inference from the well-pleaded allegations in the

plaintiff's complaint."  5 Charles Alan Wright & Arthur R. Miller, Federal Practice and

Procedure § 1271, at 600 (3d ed. 2004).

     Quoting First Union Nat'l Bank v. Pictet Overseas Trust Corp., 477 F.3d 616, 622

(8th Cir. 2007), Magistrate Judge Rau observed that the Eighth Circuit "'eschew[s] a

literal interpretation'" of Rule 8(c) that "'places form over substance.'" (R&R at 17 [Doc.

No. 70].)  Rather, the Eighth Circuit has held that when "an affirmative defense is raised in

the trial court in a manner that does not result in unfair surprise, [a party's] technical

failure to comply with Rule 8(c) is not fatal."  Fin. Timing Publ'ns, Inc. v. Compugraphic

Corp., 893 F.2d 936, 944 n.9 (8th Cir. 1990).  In Pictet, the Eighth Circuit cited cases in

---

[2]  In its Answer, Redflex asserted the following affirmative defenses: (1) that the
City's damages, if any, were caused by the unlawful acts of a third-party; (2) that the City
failed to mitigate its damages; (3) that the City's damages were caused in whole or in part
by its own negligent and unlawful conduct; (4) that Defendant paid all sums due on the
Project; (5) that laches, estoppel, and waiver bar the City's claims; (6) that res judicata
and collateral estoppel bar the City's claims in whole or in part; and (7) that the City
failed to comply with the Contract's indemnification procedures.  (Answer & Countercl.
¶¶ 48-55 [Doc. No. 2].)

which it had considered affirmative defenses first raised at various later stages of litigation.  477 F.3d at 622, n.5 (citing Sanders v. Dep't of the Army, 981 F.2d 990, 991 (8th Cir. 1992) (per curium) (finding no abuse of discretion in trial court's decision to permit affirmative defense raised for first time in a motion to dismiss); Stoebner v. Parry, Murray, Ward & Moxley, 91 F.3d 1091, 1093-94 (8th Cir. 1996) (per curiam) (citing, with favor, a 9th Circuit opinion permitting an affirmative defense to be raised for the first time in a summary judgment motion where there was no prejudice); Coohey v. United States, 172 F.3d 1060, 1064 n.8 (8th Cir. 1999) (observing that "an affirmative defense can even be raised on appeal where the evidence supports that defense."))

Magistrate Judge Rau found that, even if Redflex was required to plead invalidity as an affirmative defense, the City could not credibly claim unfair surprise or prejudice for Redflex's failure to do so.  (R&R at 18 [Doc. No. 70].)  Although neither party explicitly acknowledged the invalidity defense prior to the underlying summary judgment motions, the R&R found that the parties' filings and discovery afforded the City sufficient notice of the applicability of Minn. Stat. § 574.26, in all respects.  (Id.)   In its Objections, however, the City contends that while it was not surprised by the underlying facts, it was surprised by the defense.  (Objections at 3 [Doc. No. 74].)

The Court agrees with the magistrate judge that Plaintiff cannot claim unfair surprise or prejudice regarding the invalidity defense.  The Complaint, replete with allegations concerning the lack of a payment bond, refers to the requirements of Minn. Stat. § 574.26.  (Compl. ¶¶ 20, 49-51; 53-57; 59-62 [Doc. No. 1-1].)   Similarly, Redflex

bases its breach of contract counterclaim on the City's alleged failure to notify Redflex of the payment bond requirement.  (Answer & Countercl. ¶¶ 2-4; 7 [Doc. No. 2].)  As noted, the plain language of the statute states that the failure to procure a payment bond renders the associated contract <u>invalid</u>.   Minn. Stat. § 574.26, subd. 2 (emphasis added).   Not only were the parties on notice of the statute's general applicability – they were familiar with its language, as their pleadings refer to the statute repeatedly.   Moreover, liability under this very statute was the subject of the <u>ColliSys</u> litigation.   There, under Minn. Stat. § 574.26, the City was ultimately found liable for failing to procure a payment bond for the installation of the Program.  (R&R at 12 [Doc. No. 70].)   The City simply cannot claim surprise or prejudice regarding the assertion of an invalidity defense when the statute on which it bases most of its claims clearly refers to invalidity, absent a payment bond.

In addition, setting aside the issue of unfair surprise or prejudice, there is some question as to whether Redflex was required to affirmatively plead invalidity in the first instance.  It is the plaintiff, not the defendant, who typically bears the burden of establishing the validity of the contract in a plaintiff's breach of contract action.  <u>See</u> <u>Sec. Life Ins. Co. of America v. Southwest Reinsure, Inc.</u>, No. 11-CV-1358 (MJD/JJK), 2011 W L 6382857, at * 6 -7  (D. Minn. Dec. 20, 2011) (citing <u>Briggs Transp. Co. v. Ranzenberger</u>, 217 N.W.2d 198, 200 (Minn. 1974)).[3]  The Eighth Circuit has held that "'If

---

[3]    Under Minnesota law, the elements for breach of contract are: (1) the existence of a valid contract; (2) material breach of the contract; and (3) damages.  <u>Id.</u>

15

the defense involved is one that merely negates an element of the plaintiff's prima facie

case . . . it is not truly an affirmative defense and need not be pleaded despite Rule 8(c).'"

Masuen v. E.L. Lien & Sons, Inc., 714 F.2d 55, 57 (8th Cir. 1983) (quoting Sanden v.

Mayo Clinic, 495 F.2d 221, 224 (8th Cir. 1974)).

In Sanden, 495 F.2d at 224, the Eighth Circuit held that the defendants' failure to

plead fraud – an affirmative defense specifically listed in Rule 8(c) – did not preclude the

assertion of the defense that the plaintiff's injuries were feigned and that her lawsuit was

merely a scheme for financial gain.  Id.  Rather, with this defense, the defendants were

simply attempting to persuade the jury to reject the entirety of the plaintiff's case as

untrue.  Id.   While it may be prudent for a defendant to err on the side of caution in

asserting affirmative defenses, it does not appear that Redflex was required to plead the

defense of contract invalidity, given that the validity of the contract was an essential

element of Plaintiff's claim and that invalidity arises by logical inference from the

Plaintiff's allegations.[4]

Moreover, as noted, the City cannot claim unfair surprise or prejudice based on

Redflex's assertion of invalidity.  And, as noted in the R&R, even if the defense was not

properly asserted or preserved, the Court has discretion to grant leave to amend the

Answer to include this defense.  (R&R at 19 [Doc. No. 70]) (citing Sanders, 981 F.2d at

---

[4] The same analysis applies to Redflex's breach of contract counterclaim.  As the
magistrate judge found, because the Contract is invalid as a matter of law, Redflex cannot
establish the validity element of its breach of contract counterclaim.  (R&R at 23 [Doc.
No. 70].)

991).  For all of these reasons, the Court adopts the magistrate judge's findings that the

Contract is invalid, that a defense based on invalidity is not untimely, and that Plaintiff has

shown no unfair surprise or prejudice.   There are no genuine issues of material fact in

dispute with respect to the terms of the Contract and the operation of Minn. Stat. § 574.26.

Accordingly, all claims, asserted by either party, based on the existence of a valid contract,

fail as a matter of law.[5]

### C.      Indemnification Provisions

Alternatively, even if this Court were to find that the Contract was valid, the Court

would still deny the City's motion for summary judgment and grant summary judgment in

Defendant's favor based on the indemnification provisions in the Contract.[6]

The Eighth Circuit has observed that "[n]otice is the mainspring of an enforceable

indemnification provision – to shift liability, an indemnification provision must 'fairly

apprise[ ] [the indemnitor] of an obligation to indemnify [the indemnitee].'"  Harleysville

Ins. Co. v. Physical Distrib. Servs., Inc., __ F.3d __, 2013 WL 1831048, at *4-5 (8th Cir.

---

[5]  This includes any claims based on the breach of the implied covenant of good faith and fair dealing.

[6]  The R&R did not reach the alternative arguments regarding the indemnification provisions of the Contract, which require one to assume the validity of the Contract. Rather, the magistrate judge commented in a footnote that "[e]ven if the Court were to conclude that the Contract was valid and enforceable, a serious fact question exists as to whether the City waived its right to indemnification under the terms of the Contract and, if so, the extent of any ensuing prejudice to Redflex."  (R&R at 17, n.8 [Doc. No. 70].) While this was not the basis for Magistrate Judge Rau's ruling, the Court disagrees that a fact question exists as to waiver and prejudice, and addresses the parties' indemnification arguments.

May 2, 2013) (quoting <u>Yang v. Voyagaire Houseboats, Inc.</u>, 701 N.W.2d 783, 791–92 n. 5

(Minn. 2005)).  The unambiguous language of the Contract here requires such notice.

(Contract § 8.3, Ex. A to First Shulman Decl.)   It is true, as the City argues, that the

Contract also provides that failure to give notice will not preclude indemnification except

to the extent of "any additional or increased Losses, or other actual prejudice directly

caused by such failure."  (<u>Id.</u>)

 The Court finds no genuine dispute of material fact that Redflex has suffered

additional or increased losses or actual prejudice caused by the City's failure to give

notice.  The Contract's "Indemnification Procedures" clause not only requires prompt

written notice of claims, it requires the indemnifying party to control the defense of the

claims at issue: the indemnifying party possesses the right to choose counsel, and "to

control, compromise and settle" claims.  (<u>Id.</u>)   If, however, the indemnified party chooses

to control its own defense, it may do so,

> if the Indemnified Party irrevocably waives all rights to indemnification
> from and by the Indemnifying Party.  The Indemnifying Party and the
> Indemnified Party shall cooperate in the defense or settlement of any Claim,
> and no party shall have the right to enter into any settlement agreement that
> materially affects the other party's material rights or material interests
> without such party's prior written consent, which consent will not be
> unreasonably withheld or delayed.

(<u>Id.</u>)  The plain meaning of this provision is clear and unequivocal, yet the City did not

tender the defense of the underlying claims to Redflex, nor did the City seek Redflex's

input, much less "consent," to the resolution and settlements of the underlying litigation.

 Only in March 2010, after the <u>ColliSys</u> litigation concluded and <u>Shapira</u> had settled,

18

did the City provide written notice to Redflex of its intent to seek indemnification.  (R&R at 13 [Doc. No. 70].)   In the <u>ColliSys</u> action, the City and Redflex were co-defendants. Redflex describes that litigation as a "five-year legal battle with the subcontractor from which Redflex emerged victorious and the City defeated."  (Def.'s Mem. Supp. Mot. for Summ. J. at 1 [Doc. No. 44].)   While the City argues that Redflex had "notice" of the litigation by virtue of being named a co-defendant, the record is devoid of any evidence that the City provided notice of its intent to seek <u>indemnification</u> during that litigation. The City's liability piece of the litigation ultimately settled, but Redflex was never a party to the settlement.

In the constitutional/legality litigation, the City's failure to provide prompt indemnification notice is particularly difficult to understand, as Redflex had specifically agreed to indemnify the City "for any and all legal liability based on any and all civil, criminal and administrative actions challenging the legality or constitutionality" of the Program.  (Contract § 8.1(b), Ex. A to Shulman Decl.)

In the underlying lawsuits, the City made strategic decisions which, if a duty to indemnify were imposed, would lead to additional or increased losses for Redflex.  The R&R cites the following types of decisions that Redflex claims it would have handled differently:

> Redflex claims the City's defense made a number of strategic decisions with which Redflex appears to disagree.  Redflex argues that those decisions potentially impacted the City's liability and increased the ColliSys litigation costs.  The allegedly erroneous decisions include: failure to take deposition of the Network Electric representative, failure to serve written discovery on

> Network Electric, failure to point out discrepancy in claimed damages in
> responding to motion for judgment as matter of law, selection of attorney in
> responding to motion for judgment as a matter of law, failure to take timely
> appeal of the liability judgment, and failure to present evidence regarding
> attorney's fees to court.

(R&R at 10, n.4) (citing Def.'s Mem. Supp. Mot. for Summ. J. at 11, 13-15.)

Moreover, Redflex notes that it has always prevailed on constitutional challenges to

the use of its systems in other states.  (Def.'s Mem. Supp. Mot. for Summ. J. at 17 [Doc.

No. 44]) (citing Finley Dep. at 20-21; 66.)   Also, the City lost its right to appeal liability

in the ColliSys litigation due to some then-uncertainty in state law regarding the timing of

the filing of an appeal.  (R&R at 12 [Doc. No. 70].)   Had Redflex controlled the defense

of ColliSys on the City's behalf, it certainly might have taken a different approach to that

issue, to say nothing of the defense of the case itself.   Likewise, had Redflex been

involved in the settlement of the Shapira litigation, it might have not agreed to the terms of

the settlement.  Not only does the City seek to pass these additional or increased losses on

to Redflex, the failure to involve Redflex in these matters constitutes actual prejudice,

directly caused by the failure to give notice.  There is no way to un-do the City's past

decisions not to give Redflex an opportunity to defend or settle the City's claims.  There is

a critical difference between participating in litigation as a co-defendant, unaware that a

co-defendant may later seek indemnification, and controlling the course of litigation as the

indemnifying party, with full knowledge and control of the defense.  Even assuming the

validity of the Contract, because it precludes indemnification where additional or

increased losses or actual prejudice are directly caused by the failure to give notice, and

because such losses or actual prejudice exist here, the City's legal claims fail.

Regarding Redflex's summary judgment motion on its breach of contract counterclaim, the R&R recommended that it be denied, based on Magistrate Judge Rau's finding of contract invalidity.  (R&R at 23 [Doc. No. 70].)  In response to Plaintiff's Objections to the R&R, Redflex requests that the Court accept the R&R in its entirety.  (Def.'s Resp. to R&R at 1 [Doc. No. 75].)  Accordingly, the Court denies as moot Defendant's summary judgment motion as to Defendant's counterclaim.

### D.    Equitable Claims

As noted, Plaintiff asserts the equitable clams of contribution and equitable subrogation as alternative theories of recovery for the costs associated with the ColliSys litigation.[7]  Magistrate Judge Rau found that the City's unclean hands precluded its entitlement to equitable relief.  (R&R at 25-28 [Doc. No. 70].)  The City objects to that finding, arguing that Redflex failed to assert an unclean hands defense to the equitable claims.  (Objections at 14-15 [Doc. No. 74].)  While acknowledging that Redflex did not assert an unclean hands defense, the R&R found that the City asserted a number of equitable defenses grounded in the principle of unclean hands.  (R&R at 24 [Doc. No. 70].)  The magistrate judge found that four of Redflex's eight affirmative defenses challenged the City's inequitable conduct and sufficiently precluded recovery under the

_____

[7]  As previously noted, the City's equitable claims for contribution and equitable subrogation are premised solely on the underlying ColliSys litigation, not the litigation challenging the legality of the Program or Ordinance.  (See Compl. ¶¶ 52-62 [Doc. No. 1-1].)

21

unclean hands doctrine.  (Id., n.14.)[8]   While this Court reaches the same conclusion as the

magistrate judge that the City's equitable claims fail, it respectfully adopts slightly

different reasoning.

As the City notes, equitable relief is not granted when the rights of the parties are

governed by a valid contract.  (Objections at 14 [Doc. No. 74]) (citing Soderbeck v. Center

for Diagnostic Imaging, Inc., 793 N.W.2d 437, 444 (Minn. Ct. App. 2010)).  Thus, if the

Contract is considered valid, Plaintiff's equitable claims fail.  Because the Court finds that

the Contract is invalid, the Court will consider whether any issues of fact are in dispute as

to the City's equitable claims.[9]

The equitable doctrine of subrogation "compels the ultimate payment of a debt by

the one who, in justice and good conscience, ought to pay it.  It is not dependent upon

contract, privity, or strict suretyship."  Iowa Nat. Mut. Ins. Co. v. Liberty Mut. Ins. Co.,

464 N.W.2d 564, 566 -567 (Minn. Ct. App.1990) (citing Westendorf v. Strasson, 330

N.W.2d 699,703 (Minn. 1983)).  "The key element in subrogation cases is whether the

party seeking subrogation was compelled to pay another's debt."  Id.  "Equitable

_____

[8]  Specifically, the magistrate judge cited the following defenses in Redflex's
pleadings:  that the City failed to mitigate its damages; its damages were caused in whole
or in part by its own negligent and unlawful conduct; the City's claims were barred by the
doctrines of laches, estoppel, and waiver; and the City's claims were barred by its failure
to comply with the Contract's indemnification procedures.  (Id.) (citing Answer &
Countercl. ¶¶ 49, 52, 54.)

[9]  Under the Court's alternative reasoning, in which Plaintiff's legal claims fail
even if the Contract is considered valid, Plaintiff's equitable claims would therefore fail
because a valid contract governs the parties' rights.  Soderbeck , 793 N.W.2d at 444.

subrogation will not be applied when the parties' equities are equal or rights are unclear.

Citizens State Bank v. Raven Trading Partners, Inc., 786 N.W.2d 274, 279 (Minn. 2010)

(citing S. Sur. Co. v. Tessum, 228 N.W. 326, 329 (1929)).

In addition to the general principles of equity to which the R&R refers, Plaintiff's

equitable subrogation claim fails because the City's payment of the ColliSys judgment was

not a payment of a Redflex debt.  Rather, in the state court action, the court dismissed the

plaintiff's unjust enrichment claim, finding that Redflex had paid in full for the work it had

received on the Project.  (ColliSys Order of 3/25/09 at 16-17, Ex. K to Shulman Aff.)  The

court found that ". . . Redflex paid in full, 'dollar-for-dollar,' for the work done for it on

the project.  It cannot be said that in 'equity and good conscience' Redflex should pay for

this work, because it already has paid for this work."  (Id. at 17.)  As Redflex argues, any

equitable subrogation claim that the City might have would be against Network Electric –

not Redflex.  (Def.'s Mem. Supp. Mot. for Summ. J. at 33 [Doc. No. 44].)

The City was found directly liable in ColliSys, and ultimately settled with ColliSys,

pursuant to a Bond Act claim that ColliSys only brought against the City.  This claim was

not brought against Redflex.  Minnesota law provides that if a public body fails to obtain a

valid payment bond, the public body is liable to all persons furnishing labor and materials

under the contract.  Minn. Stat. § 574.29.   In the finding of liability and ultimate

settlement of the ColliSys Bond Act claim, the City was not compelled to pay another's

debt.  The City's claim for equitable subrogation fails.

The City's claim for contribution likewise fails.  This Court has observed that

> [u]nder Minnesota common law, contribution is an equitable remedy "based
> on equitable principles to secure restitution to one who has paid more than
> his just share of a liability." United States v. J & D Enterprises of Duluth,
> 955 F.Supp. 1153,1156 (D. Minn. 1997) (citing Hermeling v. Minnesota Fire
> & Cas. Co., 548 N.W.2d 270, 273 n. 1 (Minn. 1996)). "Contribution rests
> on common liability, not joint negligence or joint tort. Common liability
> exists when two or more actors are liable to an injured party for the same
> damages, even though their liability rests on different grounds." Farmers Ins.
> Exchange v. Village of Hewitt, 143 N.W.2d 230, 233 (1966).

DS Bond Fund, Inc. v. Gleacher NatWest, Inc., No. 99-CV-116 (MJD/JGL), 2001 WL

1168809, at *5 (D. Minn. May 1, 2001). Here, either through summary judgment or the

finding of a jury, Redflex was not liable to ColliSys under any of its claims against it.

Redflex has therefore not shared common liability to ColliSys with the City.

Further, for many of the reasons set forth in the analysis of the parties' breach of

contract claims, the City is undeserving of relief in equity. The Magistrate Judge properly

noted the maxim that he who seeks equity must do equity. (R&R at 24 [Doc. No. 70].)

The City failed to tender its defense and failed to consult with Redflex on its legal or

settlement strategy in ColliSys. There is simply no reason to grant equitable relief to the

City.

This is particularly true because, as the magistrate judge observed in his discussion

of Plaintiff's equitable claims, the City could have taken measures to protect itself by

insisting that a payment bond accompany the Contract. At the hearing on the parties'

summary judgment motions, counsel for the City conceded that, in general, the

performance bond requirement is designed to protect the City. (Tr. of 11/8/12 Hearing at

7 [Doc. No. 72].) Moreover, Plaintiff's counsel also acknowledged that the

24

ColliSys claims would have been paid under a performance bond, were such a bond in place.  (Id. at 10.)  While the parties dispute who bore the responsibility for requiring such a term in their Contract, in the final analysis, the law is clear:  liability resulting from the failure to obtain a payment bond falls on the City.  Minn. Stat. § 574.29.  In a Bond Act case between a subcontractor and the Metropolitan Airports Commission ("MAC"), the Minnesota Court of Appeals reached a similar conclusion, albeit addressing legal claims, not equitable claims:

> It is not unreasonable that the MAC pay for the benefit it received where the MAC could have taken steps to protect itself. The stipulated facts indicate the MAC has obtained payment bonds complying with Minn. Stat. § 574.26 in the past, and considered obtaining such a bond in this case. Thus the MAC could have insulated itself from liability in the event [the contractor] defaulted, but chose not to do so.  We conclude the MAC failed to comply with the bond requirement in Minn. Stat. § 574.26 and therefore may be liable for Green Electric's loss under Minn. Stat. § 574.28.

Green Elec. Systems, Inc. v. Metropolitan Airports Com'n, 486 N.W.2d 819, 823 (Minn. Ct. App. 1992).  Here, the City was a sophisticated party to the Contract and had previously executed contracts for public works which included provisions for payment bonds.  (R&R at 25 [Doc. No. 70].)  It considered the necessity of a payment bond, and concluded that none was necessary.  As the magistrate judge found, this was what the City intended, and "[e]quity will not shield it from the unintended consequences of that intentional decision."  (Id. at 26.)

For all of these reasons, the Court finds that Plaintiff's legal and equitable claims, including the claim for a declaratory judgment, fail.  Finding that no material issues of fact

in dispute, Defendant's motion is granted as to summary judgment on Plaintiff's claims

and denied as moot to Defendant's counterclaim, and Plaintiff's motion is denied.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    The R&R [Doc. No. 70] is **ADOPTED IN PART**;

2.    Defendant's Motion for Summary Judgment [Doc. No. 35] is **GRANTED in part** as to summary judgment on Plaintiff's claims, and **DENIED AS MOOT in part** as to summary judgment on Defendant's counterclaim; and

3.    Plaintiff's Motion for Summary Judgment [Doc. No. 37] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:   July 1, 2013

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Court Judge